STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard L. AMRINE, Defendant-Appellant.†

Court of Appeals

*No. 90-0401-CR. Submitted on briefs August 6, 1990.—Decided August 28, 1990.*

(Also reported in 460 N.W.2d 826.)

†Petition to review denied.

778

779

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John D. Lubarsky,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Barry M. Levenson,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Richard Amrine appeals his armed robbery conviction. Amrine contends that the trial court erred by admitting evidence discovered in plain view in his bedroom. He argues that the seizing officer did not have a prior justification for standing at the bedroom entranceway from where the plain view discovery was made. We reject his argument and affirm the conviction.

On December 8, 1988, Detective Thomas Cummings went to Amrine's home to question him about the armed robbery of a Citgo station that had occurred five days earlier. Cummings had previously interviewed a Citgo employee present during the robbery who told Cummings that the robber was wearing a blue nylon jacket, light blue gloves and a navy blue ski mask cut out around the mouth, through which the witness saw a reddish moustache. The robber was armed with a handgun. The witness said he recognized the voice of the robber as that of a frequent customer of the station. When shown a photo lineup, the witness tentatively identified Amrine as the robber.

When Cummings arrived at Amrine's home, he was admitted by a woman who shared the home with Amrine. Amrine concedes that Cummings was given valid consent to enter the living room of his home. The woman then went to the bedroom to inform Amrine that the police were there to see him. Amrine came out of the bedroom partially clothed. After Amrine agreed to talk with Cummings at the police station about the Citgo robbery, Amrine indicated that he needed to finish dressing and returned to his bedroom. Cummings followed him to the entrance of the bedroom. From that vantage point, Cummings observed in plain view on the dresser in the bedroom a navy blue ski mask and light blue gloves, identical to those described in the armed robbery. Cummings then placed Amrine under arrest.

At the hearing on Amrine's pretrial motion to suppress the evidence of the ski mask and gloves, Amrine contended that Cummings exceeded the scope of the consent given him to enter the house, and was without authority to follow Amrine to the entrance of the bedroom. Cummings, a police officer for twenty-three years, testified that he followed Amrine to the bedroom

entrance out of concern for his own safety because Amrine was a suspect in an armed robbery involving a handgun.

The trial court admitted the disputed evidence. The state concedes on appeal that the trial court upheld the seizure on the grounds that the consent given to enter Amrine's home was not restricted to the living room area. We are not convinced, however, that these were the only grounds upon which the seizure was upheld because the court also noted, "I'm satisfied that that was a reasonable thing to do given the allegations that were involved, the allegations of armed robbery." Had the court ruled solely on the grounds that consent to enter the defendant's home was not restricted, it would have been in error. This court has held that police officers pursuing an investigation into possible criminal activity should be held to the presumption that their invitation to enter a private home is limited to the room they are brought into. *State v. Altenburg,* 150 Wis. 2d 663, 670-71, 442 N.W.2d 526, 530 (Ct. App. 1989); *see also State v. Monahan,* 76 Wis. 2d 387, 394-95, 251 N.W.2d 421, 423 (1977). But even if the grounds upon which the trial court admitted the disputed evidence were erroneous, such error would not automatically warrant reversal of Amrine's conviction. If a trial court reaches the correct result for the wrong reason, it will be affirmed. *State v. Holt,* 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985). An appellate court may sustain a trial court's holding on a theory or on reasoning not presented to the trial court. *Id.* at 125, 382 N.W.2d at 687.

Amrine's motion to suppress the seized evidence was based on the fourth and fourteenth amendments to the United States Constitution, and art. I, sec. 11, of the

Wisconsin Constitution. The fourth amendment requires that searches and seizures be reasonable. *Monahan,* 76 Wis. 2d at 395, 251 N.W.2d at 424. The fundamental rule applicable to searches and seizures is that warrantless searches are per se unreasonable under the fourth amendment except under certain well-defined circumstances. *Id.* There are recognized distinctions in the appropriate levels of protection to be afforded by the fourth amendment to different forms of intrusion, and the highest level of protection is afforded to a dwelling place. *Id.* at 396, 251 N.W.2d at 424. A warrant is unnecessary if contraband is in plain view. But the plain view doctrine does not apply when an officer does not have a right to be in the place where he viewed the contraband. *Id.*

The Wisconsin Supreme Court has described the elements required for the operation of the plain view exception:

> 1. The officer must have a prior justification for being in the position from which the "plain view" discovery was made;

> 2. The evidence must be in plain view of the discovering officer;

> 3. The discovery of the evidence must be inadvertent; and

> 4. The item seized, in itself or in itself with facts known to the officer at the time of the seizure, provides probable cause to believe there is a connection between the evidence and criminal activity.

*Bies v. State,* 76 Wis. 2d 457, 463–64, 251 N.W.2d 461, 464–65 (1977).

An appellate court exercises independent appellate review of constitutional facts. *State v. Murdock,* 155 Wis. 2d 217, 226, 455 N.W.2d 618, 621 (1990). Whether the facts satisfy the constitutional requirement of reasonableness presents a question of law, which this court reviews independently of the trial court's decision. *Id.* Whether a particular place is an area from which a defendant might secure a weapon is a matter of constitutional fact that an appellate court will review independently of the trial court's findings. *Id.*

At issue in this case is whether Cummings had a prior justification for being in the position from which the "plain view" discovery of evidence was made. Had there been a proper arrest prior to Cummings' following Amrine to the bedroom entrance, there appears to be little question that precedent would support striking the balance between the governmental interest in ensuring the safety of police officers and the fourth amendment interests of the arrested individual in favor of the officer's safety. *See Washington v. Chrisman,* 455 U.S. 1, 7 (1982); *see also Murdock,* 155 Wis. 2d at 235, 455 N.W.2d at 626 (allowing a contemporaneous warrantless search incident to arrest limited to the area within the arrestee's immediate control); *Maryland v. Buie,* 110 S. Ct. 1093, 1099–1100 (1990) (allowing a limited protective sweep in conjunction with an in-home arrest).

Amrine correctly distinguishes these cases on the grounds that he was not arrested at the time Cummings followed him into the bedroom. As Amrine points out, the *Chrisman* Court relied on a governmental interest described in these terms: "The officer's need to ensure his own safety—*as well as the integrity of the arrest*—is compelling." *Id.* at 7 (emphasis added). We note, however, that fourth amendment case law supports other

exceptions to the warrant requirement in addition to the search incident to arrest exception:

> [T]he freedom of the police to act is not limited to cases where there is probable cause as to the commission of crime. Police have the right to undertake "legitimate and restrained investigative conduct . . . on the basis of ample factual justification" even though that justification falls short of what would be required to support arrest or formal search.

*Bies,* 76 Wis. 2d at 465, 251 N.W.2d at 465 (citing *Terry v. Ohio,* 392 U.S. 1, 15 (1968)). The *Bies* court further delineated the test to be used when examining a warrantless search outside the context of a search incident to arrest:

> [R]easonable, appropriately minimized intrusions into the privacy guaranteed by the Fourth Amendment may be justified by circumstances falling short of the probable cause necessary to support arrest or search. The ultimate standard under the Fourth Amendment is the reasonableness of the search or seizure in light of the facts and circumstances of the case. The determination whether police conduct is constitutionally reasonable in a given case must be made by application of "what is essentially an indeterminate and flexible test."

*Id.* at 467–68, 251 N.W.2d at 466 (citations omitted).

We are asked, then, to decide as a matter of law whether Cummings' action in following Amrine to the bedroom entrance under these circumstances satisfies the constitutional requirement of reasonableness demanded of a warrantless search consistent with fourth amendment principles. Cummings had twenty-three years' experience as a police officer. He was questioning a suspect in an armed robbery where a handgun had been

used. A witness identified Amrine as the robber, based on his familiarity with Amrine's voice as that of a frequent customer, coupled with his partial view of a reddish moustache through the robber's ski mask. These facts, taken together, constitute a sufficient basis for Cummings to have formed a reasonable belief that Amrine might be heading to his bedroom to gain possession of a weapon.

In addition, the interview with Amrine took place in Amrine's home. As our supreme court noted in the context of an in-home arrest: "[T]he danger to police may be heightened when the arrest is made in the arrestee's home because the police officer will rarely be familiar with the home he or she is entering. The arrestee, however, knows where items such as weapons and evidence are secreted." *Murdock,* 155 Wis. 2d at 231, 455 N.W.2d at 624; *see also Buie,* 110 S. Ct. at 1098. Where an arrest has not yet taken place, the danger to a police officer on a suspect's "home turf" is just as real.

We hold that Cummings' actions were those of an officer who possessed a reasonable belief based on specific and articulable facts that a suspect interviewed in his home prior to arrest posed a danger to those on the scene. Because Amrine requested permission to go to his bedroom to complete dressing, the bedroom became an area from which he might secure a weapon. The act of following Amrine to the bedroom entranceway was a minimal intrusion on his privacy. It was, therefore, reasonable for Cummings to follow Amrine to the entrance of the bedroom to ensure his own safety, and that of others on the scene.

On similar facts, the Utah Supreme Court held that the officer involved "was fully justified in following

defendant into the bedroom." *State v. Kelly,* 718 P.2d 385, 389 (Utah 1986). As the *Kelly* court noted:

> As the officer had just followed footprints leading from the scene of a grisly homicide to defendant's house and inside the house found a parka closely matching a description given by witnesses, the officer had reason to be concerned about possible danger, and in fact the officer testified that he followed defendant into the bedroom because he feared there might be a weapon there.

*Id.* Here, as in *Kelly,* a police officer was investigating the commission of a crime involving the use of a weapon. No arrest had yet taken place, but a witness had tentatively identified Amrine as the armed robber. We also note that the officer remained at the bedroom entranceway to observe Amrine, rather than following him into the bedroom.

We recognize that in Wisconsin a limited search incident to an arrest in the home is per se reasonable as long as the search is conducted contemporaneous to the arrest and is within the area of the arrestee's immediate control. *Murdock,* 155 Wis. 2d at 236, 455 N.W.2d at 626. We announce no such per se rule here. When police officers conduct an in-home interview of a suspect and attempt to monitor that suspect's movements because they are concerned about the procurement of possible weapons, courts must examine the facts underlying each case to determine whether a given search was reasonable. The determination whether police conduct is constitutionally reasonable in a given case must be made by application of what is essentially an indeterminate and flexible test. *Bies,* 76 Wis. 2d at 468, 251 N.W.2d at 466.

On these facts, Cummings had a legitimate prior justification for being in the position from which the plain view discovery of the ski mask and gloves was made, and therefore the trial court was not in error when it admitted these items in evidence. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.